NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

WILLIAM H. SINGERHOFF, PETITIONER, v. WESTERN
ELECTRIC COMPANY, INCORPORATED, RESPONDENT.

**Traumatic Epilepsy as Result of Being Thrown Backward While
Engaged in Work Assigned Petitioner, Striking on His Head
—Respondent's Allegation That it Had Not Had Sufficient
Opportunity to Examine Petitioner Not Sustained.**

On findings of fact, determination and rule for judgment.

The above matter having come on for hearing on December 31st, 1926, January 14th and January 20th, 1927, and having been submitted to me for determination, I hereby find and determine as follows:

A petition was filed by William H. Singerhoff, of 14 Thayer street, New York City, praying for compensation for injuries alleged to have been sustained as a result of an accident which occurred on March 5th, 1925. Said petition was filed on May 14th, 1926, compensation having been paid up to and subsequent to the filing of the petition. The petition alleged that while the petitioner was loading a standing machine with reels of wire, so as to have the machine in readiness for speed and electrical test of the motor, the machine or drum of the machine became unbalanced; that a man and the petitioner had to revolve said drum to a loading position by hauling, and that as both were tugging away, all at once the machine became unbalanced and petitioner was thrown backward approximately ten feet, landing on his head, and his back struck the truck.

An answer was filed by respondent, in which the happening of an accident on March 5th, 1925, was admitted, and in which the respondent denied any knowledge or information sufficient to form a belief that the claimant is suffering from any disability as a result of the injuries sustained on March 5th, 1925. Respondent set up a further defense in that it

claimed the petitioner refused to permit a thorough medical observation by a specialist, and that it was impossible to fix the permanent disability, if any, without observations.

I have carefully considered the testimony and the briefs of the attorneys for the respective parties. I find that William H. Singerhoff was employed by the respondent on March 5th, 1925, at a salary of $35.91 per week, and that he sustained an accident arising out of and in the course of his employment on March 5th, 1925, and that the petition in this case is filed within time because payments of compensation were made up to and subsequent to the filing of the petition herein, compensation payments having been made on September 11th, 1926. The remaining question to be determined from the petition was whether the petitioner was still suffering disability as a result of said accident, and if so, the nature and extent of such disability.

After careful examination of the testimony, I find that the petitioner is still suffering from disability occasioned by the accident of March 5th, 1925, and conclude that such disability is due to the fact that he is suffering from what is ' known as post traumatic epilepsy following an injury.

The testimony shows that the petitioner was struck on the back of his head; that he did not receive immediate medical attention, but was first treated at the plant on March 20th. He was treated at various times at the plant hospital but his condition did not seem to improve, and, in fact, seemed to grow worse. He testified that one Saturday night while walking with a friend in New York City, he was overtaken by a spell of some kind and taken to the Harlem Hospital. The petitioner could not remember what happened that Saturday night. He returned to the plant the following week and was immediately ordered to be seen by Dr. Wolfs, and after an examination by him he returned to his home. About a week later, he testified, he had another similar spell. The respondent placed him in St. Barnabas Hospital for observation, where he remained from October 15th to November 11th. During all this period of time Dr. Wolfs visited him, Dr. Beling visited him twice and Dr. Herold visited him at

different times. The testimony shows that he left this institution of his own accord and went to St. Luke's Hospital in New York, where Dr. Pardee and Dr. Allen were in attendance. He remained in St. Luke's Hospital from November 13th to December 15th, during which period of time his tonsils were removed, as had been previously recommended by Dr. Beling. He had a lumbar puncture, blood count and a Wasserman test, also other tests. While in St. Barnabas Hospital he had attacks reported on the hospital records as semi-conscious spells. While in St. Luke's Hospital he had at least two attacks or spells, during which he had an unconscious interval. The testimony of Dr. Theophalus Allen shows that he, though a young physician, had been in the Bloomingdale Hospital at White Plains, and has had considerable experience in observing epileptic conditions. He described this attack which he saw in St. Luke's Hospital, and I find that his observation and description of this attack is particularly important and useful in the determination of this case. Dr. Allen described this attack as follows:

"Yes, he was seen by me a few moments or perhaps two minutes after the convlusion had begun. At that time he was unconscious. He was moving his arms and legs. His head was turned to the left and his eyes open, and eyeballs rolled upwards to the roof. I thought that the left eye was going, was moving a litle more than the right. While I was observing him these movements ceased, the patient became relaxed, at that time he was unconscious, a period of unconsciousness lasted about three or four minutes more, and then I was able to arouse him but he was dazed and confused and would not talk."

Dr. Allen diagnosed his condition as traumatic epilepsy, based on the history, X-ray findings and the convlusions, as well as the spinal fluid test. He testified that other possibilities were ruled out by the tests that were made. He also testified that the same convlusion was observed by one of the nurses and by an orderly.

I find that the diagnosis of Dr. Allen is very ably corroborated by the testimony of Dr. Bernard Sacks, a neurologist

of high standing and much experience. Dr. Sacks examined Mr. Singerhoff, and from his examination and the description of the attack witnessed by Dr. Allen, he concluded that the petitioner is suffering from post traumatic epilepsy following an injury. I am impressed by the reason given by Dr. Sacks, concluding that this is traumatic epilepsy. He concludes this to be the diagnosis because there was no history of any previous convulsions during his childhood and no evidence of any convulsons previous to the accident, because fully ninety-five per cent. of the convulsions occurring in middle life, and not due to heredity, are due to accidents. Dr. Sacks concluded that the tests made at the hospital outruled other conditions; that the fact that his eyes remained open through the attack and rolled upward was indicative of general epilepsy, together with the fact that the duration of the attack was short. I am impressed by the testimony of Dr. Sacks also from the fact that it is very difficult for a physician to have the opportunity to observe an attack, and that in this particular case the attack was observed by a reputable doctor, to wit, Dr. Allen. I am impressed also by the fact that although Mr. Singerhoff went to St. Luke's Hospital of his own accord, his care at that institution was assumed by the western electric and the bill paid by that company, and that they did not produce the evidence secured there, but left it to the petitioner to call the doctor who observed him in that institution. Dr. Sacks testified as follows:

"I am willing to say now in all my poverty of person, this man is a definite epileptic."

Dr. James F. Hens, a man who has specialized six years in neurology and is the chief neurologist in Lennox Hill Hospital, shows from his testimony that he took a great deal of interest in this case, examined and treated Mr. Singerhoff, and that he is also of the opinion that the petitioner is suffering from traumatic epilepsy and that he is eighty to eighty-five per cent. disabled, based upon the standpoint of ability of a normal man.

Dr. Herold was produced by the respondent. He attributed the petitioner's condition to hysteria. He seemed to have

been interested in treating this case, and admitted that the petitioner was continually getting worse. I cannot believe that the petitioner's condition at this time is due to hysteria. I observed him carefully while he was on the witness-stand and did not observe any symptom which would lead me to believe such conclusion. Dr. Herold saw this man come out of one attack at St. Barnabas Hospital, but he did not see him in the early stages of that attack and I do not believe that he saw enough of the attack to adequately judge what he was suffering from.

Dr. Christopher O. Beling attributed his condition to infected tonsils. These were removed at St. Luke's Hospital. Dr. Beling never saw him after the tonsils were romeved, and I find nothing in Dr. Beling's testimony that would convince me that such condition as he is now suffering from could be attributed to infected tonsils, which have since been removed.

Dr. Jean F. Wolfs admitted that there was something the matter with Mr. Singerhoff; that he was suffering from disability when examined by him and when referred to Dr. Beling. I find that the attorney for the respondent did not venture to ask any of his doctors hypothetical questions to disprove traumatic epilepsy based upon all the facts in evidence.

I therefore find that the petitioner is suffering from traumatic epilepsy as a result of the accident on March 5th, 1925, arising out of and in the course of his employment with the respondent, and that his disability is equal to seventy-five per cent. of total. I find that he has been paid all temporary compensation to which he is entitled, and that he is not entitled to be reimbursed for the services of doctors which he incurred at his own expense.

The respondent contended that he did not have the proper opportunity to observe the petitioner and to determine what he was suffering from. I do not find any justification in this defense. He had the opportunity to observe the petitioner for about a month in St. Barnabas Hospital and a similar period in St. Luke's Hospital. The petitioner was also under the observation of Drs. Herold, Wolfs and Beling. I do not

find the petitioner ever refused an examination and I do not find anything in the Workmen's Compensation act which would compel him against his will to submit to further imprisonment in a hospital to be observed by the respondent.

It seems to me there was sufficient evidence as to his condition to be drawn from the confinements in the two hospitals.

It is thereupon, on this 22d day of June, 1927, on motion of McDermott, Enright & Carpenter, attorneys for the petitioner, ordered that judgment be entered in favor of the petitioner and against the respondent for compensation for seventy-five per cent. of total disability, or three hundred and seventy-five weeks at the rate of $17 per week, to be paid from September 11th, 1926, the date to which the compensation has already been paid.

Further ordered that the respondent pay to the petitioner's medical experts the following amounts: To Dr. Theophalus Allen, $50; Dr. Bernard Sacks, $50; Dr. James F. Hens, $50.

It is further ordered that the attorneys for the petitioner receive as a counsel fee for services rendered heretofore in this case the sum of $1,000, of which $500 is to be paid by the respondent and $500 by the petitioner.

It is further ordered that the respondent be ordered to deduct from the compensation payments, which will at the present time be due to the petitioner, the sum of $500, representing the portion of the counsel fee to be paid by the petitioner, and to draw a check to the attorneys for the petitioner in said sum in addition to the $500 which the respondent is to pay on said counsel fee.

CHARLES E. CORBIN,
*Deputy Commissioner.*